The action was continued nisi, and at this term, no argu ment being had, the opinion of the Court was delivered as follows by
* Parsons, C. J.
A verdict in this action was found [* 113 ] for the tenant, which the demandant moves to set aside, that he may have a new trial.
The point in dispute may be easily stated, without having recourse to all the boundaries mentioned in the case, to understand which a plan might be necessary.
Elizabeth and Alice Jefts were once seised in fee of the several parcels of land mentioned in the case, one of which was claimed by Joseph Wilson, another by the demandant, and a third by John Jefts, by separate deeds from Elizabeth and Alice, and under John Jefts the tenant claims; and to find the issue in the cause, it was necessary to ascertain the north-east corner of the parcel of land conveyed to the demandant by the deed of the said Elizabeth and Alice, dated February 18, 1805. This deed places the north-east corner at a stake and stones by Joseph Wilson’s land, on a certain highway. The next inquiry then, is, Where was Wilson’s land ? He had before purchased his parcel of the same grantors by a deed duly executed, and the stake and stones standing by this land of Wilson’s is agreed. The tenant insists that this stake and stones is the north-east corner of the demandant’s land ; and if it is, the verdict is right. The same Wilson had contracted with John Jefts, the brother and agent of the grantors, and had paid him for half an acre of land to the southward of his first purchase, and adjoining on the same highway, at the south-easterly corner of which was a stake and stones by the same highway, which would be the north-east corner of Crosby’s land, if it bounded northwardl) *106 on the half acre, which he contends that it did ; and if this last stake and stones is the north-east corner of Crosby’s land, the verdict is wrong. The question is, therefore, reduced to this, — whether Crosby’s land adjoined northwardly on Wilson’s first purchase, of which he had a conveyance, or on the half acre, of which he had no conveyance.
Dana for the demandant.
Ward and Jos. Locke for the tenant.
Wilson, after his bargain with John Jefts, occupied the half acre for two years, as he would occupy his own land, including the time when Crosby’s deed was executed; but he did not claim [*114] the land, and would have informed any inquirer * that he had no title to it, but had contracted with John Jefts for one. In 1806, he applied to the owners, Elizabeth and Alice Jefts, for a title, but, they refusing to give him one, he abandoned the occupation. It further appears that Crosby’s deed conveys to him his land, with all the buildings thereon, and if he is bounded on Wilson’s first purchase, there will be only a barn on his land ; but if he is bounded by the half acre, there will be a house also included.
For the tenant it appears that neither the grantors nor Parker had any knowledge that John Jefts had bargained with Wilson for the half acre ; and as to the expression of “ all the buildings,” it was found that the grantors purchased all these parcels of Solomon Pollard, by a deed conveying them with all the buildings thereon, when in fact there were no buildings thereon, they having been erected afterwards ; and that all the land, to which Wilson had any title on record, was his first purchase.
Upon considering this case, we are all of opinion that the verdict is right, because Crosby is bounded northwardly on Wilson’s land, and Wilson’s first purchase is all the land that he in fact owned, and all the land, of which he had any title on record, by which the tenant could ascertain the boundaries, and all the land which the grantors of Crosby, who were also the grantors of Wilson, could contemplate as Wilson’s land. And if the first purchase of Wilson is not a boundary of Crosby’s land, then there will be half an acre between Crosby and Wilson, the property of the grantors, not conveyed, and Crosby’s northern boundary will be on other land of the grantors. As to the words “ and all the buildings thereon,” they are often inserted by unskilful scriveners, without any particular meaning, and in fact have no legal operation. This unskilfulness appears in this case from Pollard’s deed, in which they were intro* duced, when in fact no buildings were on the land.

Judgment according to the verdict.