MONROE YOUNG, appelant, *vs.* CARLTON McGOWN.

*Levy — construction of.*

Where a levy describes land as "commencing at the south-west corner of Peter McGown's lot," such point is to be found at the south-west corner of land owned by Peter McGown, and not at the south-west corner of land occupied by him, under a contract of purchase, although the latter lot is generally known as and called the Peter McGown lot.

ON REPORT.

TRESPASS for entering and cutting and carrying away grass from a certain close described in the writ as follows: "Bounded on the north by land of Edward McGown; on the east by land of the defendant; on the south by land of the defendant; on the west by county road leading to Bangor; and being the same premises set off on execution to one V. D. Pinkham, from land of James McGown."

The entering and cutting were admitted.

The plaintiff claimed title through *mesne* conveyances from a levy of an execution against James McGown. The land in the levy was described as follows; "Beginning at the eastern side of the county road leading from Ellsworth to Bangor, at the south-west corner of Peter McGown's lot; thence running easterly along the line of said McGown's lot, fifty rods; thence southerly, at right angles with the aforesaid line, twenty-one rods, to a stake and

stones; thence westerly on a line parallel with the first-mentioned line to the county road; thence northerly on said road to the place of beginning."

The validity of the levy was admitted.

The lot next north of the alleged *locus* was, at the time of the levy and alleged trespass, owned by Edward McGown, the legal and record title thereto being in him. The adjoining lot on the north of the Edward McGown lot was then owned by Peter Mc-Gown, the legal, record title thereto being in him.

The diagram shows the situation of the lots.

The plaintiff contended that the levy covered the *locus* marked " B ; " while the defendant contended that it covered the parcel marked " A,"—part of Edward McGown's lot.

The defendant claimed title by deed from James McGown, which included the *locus* " B ; " and the defendant's title thereto was admitted to be good unless the levy covered it.

The plaintiff offered to prove by parol, against the seasonable objection of the defendant.

1. That, at the time of the levy, Peter McGown was occupying the Edward McGown lot, under a contract to purchase the same ;

2. That the Edward McGown lot, at the time of the levy, was generally known as and called the Peter McGown lot; and

3. That the officer, in making the levy, actually did levy upon the *locus* " B," beginning at the south-west corner of the Edward McGown lot, and that the defendant had knowledge of the fact when he took his deed.

If the offered evidence was not admissible, or, when admitted, would not sustain the action, the plaintiff was to be nonsuited.

*A. Wiswell*, for the plaintiff, cited,

As to rules of construction, *Waterhouse* v. *Gibson*, 4 Greenl. 230 ; *Pride* v. *Lunt*, 19 Maine, 115.

As to the admissibility of parol evidence, 1 Greenl. on Ev. §§ 285, 288 ; *Pride* v. *Lunt, supra ; Gerrish* v. *Towne*, 3 Gray, 82–88 ; *Woods* v. *Sawin*, 4 Gray, 322 ; *Sargent* v. *Adams*, 3 Gray, 78.

*E. Hale & L. A. Emery*, for the defendant.

DICKERSON, J. Trespass for entering the plaintiff's close and cutting and carrying away the grass. The cutting and carrying off are admitted. The plaintiff claims title to the *locus* through *mesne* conveyances from the levy of an execution against James McGown. The validity of the levy is admitted, but there is a variance between the description of the premises in the levy, and that in the plaintiff's deed. Indeed, it is admitted that the description in the levy, unexplained, does not cover the *locus*.

The northern line of the premises, in the levy, is described as " beginning at the south-west corner of Peter McGown's lot, thence running easterly, along the side of said McGown's lot." The *locus* is described as " bounded on the north, by land of Edward McGown." The case finds that when the levy was made, Peter

McGown owned the land lying north of the land levied upon, Edward McGown that lying south of it, and James McGown, the judgment debtor, the land lying south of Edward McGown's lot ; so that the land levied upon, according to the description in the levy, was land of Edward McGown, and not land of James McGown, the judgment debtor.

The plaintiff seeks to answer this objection by introducing parol evidence that when the levy was made, Peter McGown occupied the Edward McGown lot under a contract to purchase the same ; that that lot was known and called the Peter McGown lot, and that the officer actually made the levy upon the *locus*. In other words, the plaintiff claims, that when a party owns one piece of land and occupies another piece owned by another person, and land passed by levy or conveyed by deed is described as bounded on his " lot," parol evidence is receivable to show that the land he occupied was intended, and not the land he owned, and that the instrument of conveyance is to receive this construction.

Levies upon real estate are to be construed by the same rules as conveyances by deed. As the proceeding is *in invitum*, the language of the levy is to be construed most strongly against the creditor and his grantees. The words used are the language of the creditor whose duty it is to ascertain the title and boundaries of the land before he causes the levy to be made. The court will give to the language of a deed or levy its usual signification and meaning, and not a forced or unusual construction in order to relieve a party from the effects of its obvious and ordinary import. Provision is made by law for recording deeds and levies, as a guide for purchasers and creditors. Such record shows the ownership, and not the occupation. Parties upon examining the record, regulate their action accordingly, and have a right to rely upon the accuracy and permanency of the description of the premises as it appears of record. The insecurity resulting to titles to real estate, from giving to the language describing the premises in a deed or levy an exceptional meaning, or allowing it to be changed and contradicted by parol evidence, is too apparent to need illustration or argument.

Young *v.* McGown.

The description in the levy under consideration is by monuments, courses, and distances, and is easily traceable on the face of the earth. The use of the word "lot," as applied to a division or parcel of land is quite common in this country, if, indeed, it was not thus first used in America. The expression, A's corner, or A's lot, means the corner of A's land, or the lot owned by him. If a more restricted meaning is intended, appropriate, qualifying words are used, as the corner of land in the occupation of A, or the lot rented to him. The call in the levy is for "the south-west corner of Peter McGown's lot," and "the line of said McGown's lot." The corner is described as being at the eastern side of the county road, leading from Ellsworth to Bangor. The record of Peter McGown's deed shows that he owns land at the corner and on the line indicated in the levy. Can the judgment creditor under such a levy, maintain his title to other land than that described in the levy, upon introducing parol evidence that the call in the levy was for a "lot" occupied, but not owned by Peter McGown, and that the levy was actually made on such lot? We think not. To allow this, would be to admit parol evidence to control written evidence, and to deprive parties, in many cases, of the security afforded them by the law requiring levies to be recorded. The creditor, in making his levy, called for Peter McGown's corner and lot, meaning the corner to which his land came, and the lot he owned; neither he nor his grantee can hold title to other land under this levy, upon proof that it was intended to bound the land levied upon by land, owned by Edward McGown, but occupied by Peter. Both the judgment creditor and his grantees are concluded from maintaining such claim by the calls in the levy. *Crosby* v. *Parker*, 4 Mass. 113; *Wellfleet* v. *Truro*, 9 Allen, 137; *Wiswell* v. *Martin*, 54 Me. 270.

*Plaintiff nonsuit.*

APPLETON, C. J.; CUTTING, KENT, and DANFORTH, JJ., concurred.