EUNICE W. CARVILLE *vs.* WILLIAM HUTCHINS.

Somerset.   Opinion March 2, 1882.

*Deed.   Title by disseizin.*

Prior to the enactment of R. S., 1841, c. 91, §1, the deed of one who was disseized could not, during the continuance of the disseizin, convey a title to his grantee.

Where a grant of land is made with fixed and definite metes and bounds capable of being ascertained on the face of the earth, it cannot be enlarged so as to include adjoining land by the mere addition of the words "together with the buildings thereon standing," although such adjoining land is covered by corners of the buildings referred to.

The seizin acquired by a first disseizor will not enure to the benefit of other disseizors who come after him unless there is a privity of estate between them and him either by purchase or descent.

ON EXCEPTIONS.

Writ of entry in which plaintiff demands certain premises in New Portland.

At the trial after the evidence was out, the presiding justice ruled as a matter of law that the plaintiff was entitled to recover and to this ruling the defendant excepted.

The material facts are stated in the opinion.

*Walton and Walton,* for the plaintiff, cited : *Crosby* v. *Parker,* 4 Mass. 110 ; *Page* v. *McGlinch,* 63 Maine, 472 ; *Blethen* v. *Dwinel,* 34 Maine, 133 ; *Bolster* v. *Cushman,* 34 Maine, 428 ; *Ward* v. *Fuller,* 15 Pick, 185 ; *Farwell v̂. Rogers,* 99 Mass. 33 ;

*J. I. Hopkins,* for the defendant, cited : 3 Wash. R. P. * 628, * 623, * 631 ; *Esty* v. *Baker,* 50 Maine, 331 ; *White* v. *Williams,* 48 N. Y. 334 ; *Clark* v. *Gilbert,* 39 Conn. 94 ; *Williams* v. *Buker,* 49 Maine, 428 ; *Sohier* v. *Coffin,* 101 Mass. 179 ; *Poignard* v. *Smith,* 6 Pick. 172 ; *Holton* v. *Whitney,* 30 Vt. 405 ; *Hamilton* v. *Wight,* 30 Iowa, 480 ; *Cornell* v. *Jackson,* 3 Cush. 508.

BARROWS, J.   The plaintiff has an uncontroverted title by deed to a lot of land and buildings thereon, situated in West New Portland village and lying easterly of the one rod strip

here in controversy; the defendant has a like title to a triangular lot lying westerly of said one rod strip.

The question is which party has the better title to this strip? The plaintiff produces a quit-claim deed to herself from Addison Spooner, dated Febuary 5, 1877, in which the parcel conveyed is described as "the same land conveyed to me (A. S.) by Ward Spooner by a quit-claim deed dated April 23, A. D. 1853, and being also the same premises conveyed to the said Ward Spooner by Samuel P. Strickland by a deed dated May 16, 1834, and recorded," &c. "to which deed so recorded reference is had." The deed thus referred to unmistakably describes the identical one rod strip in controversy.

But the defendant contends that the plaintiff acquired no title by these deeds because he says that Samuel P. Strickland at the date of his deed to Ward Spooner in 1834, had been and then was disseized of this one rod strip.

It is true that prior to the enactment of § 1, c. 91, R. S., of 1841, (now embodied in R. S. of 1871, c. 73, §1,) the deed of one who was disseized could not, during the continuance of the disseizin, convey a title to his grantee. *Williams* v. *Buker*, 49 Maine, 429. If the testimony in the case would have justified the jury in finding that Strickland was in fact disseized when he conveyed to Ward Spooner, the defendant's point would be well taken; but the testimony falls far short of such proof. It appears that Strickland had a conveyance from Oliver Peabody, Jr. April 30, 1828, of a lot fronting on the street five rods and including the one rod strip, by which lot Ward Spooner in his deed of March 20, 1831, to Thomas Spooner under whose heirs the defendant claims, bounded the lot he was then conveying to his son Thomas.

By accepting a conveyance thus limited, Thomas Spooner recognized the title of Strickland in the one rod strip, and there is nothing to show that any use he made of it before or afterwards was under a claim of right, or otherwise than in submission to the title of the true owner. Had he been in possession, claiming title in himself, it is not probable that his father, who had given

him the house lot originally, would have taken the deed of the one rod strip from Strickland in April, 1834.

It is not sufficient to defeat the deed under which the plaintiff's title is ultimately derived to show acts of possession by Thomas Spooner without showing that such possession was adverse to Strickland's title.

The plaintiff thus exhibiting a title by deed to the demanded premises through mesne conveyances from an undisputed former owner, the next inquiry is, can the defendant show a better title?

Confessedly the parcel of land described in the deeds introduced by the defendant, is bounded easterly by the westerly line of the one rod strip and does not include any portion of it unless the deeds can be construed so as to cover the trifling pieces over which the corners of the buildings erected upon the lot to which the defendant has a valid title by deed, project.

But where a grant of land is made with fixed and definite metes and bounds capable of being ascertained on the face of the earth, it seems clear that it cannot be enlarged so as to include adjoining land by the mere addition of the words "together with the buildings thereon standing," although such adjoining land is covered by corners of the buildings referred to. It is plainly not within the terms used and it has no analogy to the cases where the grant of the building has been held to carry the land on which it stands.

This phrase is said by the court in *Crosby* v. *Parker*, 4 Mass. 114, to have no legal operation. We think it certain that in the connection in which it is here used it can have none such as the defendant claims for it. Nor is it possible to sustain the defendant's claim of title by adverse possession. His own possession, if upon the loose testimony offered it could be regarded as exclusive and adverse, has not been long enough to avail him. Nor can he tack thereto the consecutive possessions by his predecessors to make a continuity of disseizin, for they did not embrace in their deed to him any supposed rights of theirs in the one rod strip if they had any, but, on the contrary, bounded him by the west line of the same. As was said by the court in *Ward* v. *Bartholomew*, 6 Pick. 415, "nothing being sold to the tenant except

what was included in the boundaries stated in his deed he has no right by an entry under the deed to the excess which was in the possession of his grantor." It is familiar law that the seizin acquired by a first disseizor will not enure to the benefit of other disseizors who come after him unless there is a privity of estate between them and him either by purchase or descent.

The want of such privity would of itself be fatal to the defendant's claim; but we may remark further that the evidence fails to show a title by adverse possession in Thomas Spooner or his heirs. That Thomas Spooner's occupation, so far as it was not a mere trespass, was by permission of his father who bought this strip from Strickland in 1834, under the circumstances here disclosed could hardly be doubted, and had it been exclusive and adverse, inasmuch as Thomas died "more than thirty years before the trial," the proof that it continued for twenty years is wanting. He was succeeded by his son Addison Spooner, the plaintiff's grantor, who took a deed of the locus from his grandfather, Ward Spooner, in 1853, and having both title and possession is presumed to claim by his title and not by wrong. *Moulton* v. *Edgcomb*, 52 Maine, 32; *Page* v. *McGlinch*, 63 Maine, 475, 476, and cases there cited.

Moreover the possession of this strip seems to have been a mixed possession by the occupants of the lots now respectively owned by the plaintiff and defendant, each using it more or less for convenient access to their respective dwellings.

Under such circumstances it is hardly necessary to say that no title by possession would accrue to either; and the seizin would be in the party having the legal title by conveyance from the former owner.

*Exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.